# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOANN MANNING :
:
        Plaintiff :    CIVIL ACTION
:
  v. :
:    NO:   2:05-CV-4724
TEMPLE UNIVERSITY :
:
    and :
:
IRA M. SCHWARTZ` :
:
      Defendants :
:

FILED
MAY 16 2006
MICHAEL E. KUNZ, Clerk
By_____Dep. Clerk

## PLAINTIFF'S APPENDIX OF EXHIBITS IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Respectfully Submitted,

BY:   /s/ Andrew M. Calvelli
       ANDREW M. CALVELLI, ESQUIRE
       175 Strafford Avenue
       Suite One, PMB 401
       Wayne, PA 19087
       (610) 983-3204
       Attorney for Plaintiff, JoAnn Manning

DATED:   May 10, 2006

| EXHIBIT | DESCRIPTION |
|---------|-------------|
| A | Portion of the Temple-Department of Education Contract |
| B | CFR 3452.243-70 |
| C | August 25, 2003 letter from Ira Schwartz to Department of Education<br>October 10, 2003 letter from Department of Education to Ira Schwartz |
| D | Vicki McGarvey LSS Review Report |
| E | Various Department of Education emails November – December 2003 |
| F | October 30, 2002 email from Vicki McGarvey to Ira Schwartz |
| G | January 24, 2003 letter from Ira Schwartz to Joseph Dominic |
| H | August 14, 2003 letter from Ira Schwartz to Joseph Dominic |
| I | September 10, 2003 letter from Ira Schwartz to Joseph Dominic |

## CERTIFICATE OF SERVICE

I, Andrew M. Calvelli, attorney for the Plaintiff in the above matter, hereby certify that a true and correct copy of the foregoing Appendix of Exhibits in Opposition to Defendants' Summary Judgment Motion was served, via U.S. Mail, postage prepaid, on the 11th day of May, 2006, upon the following:

David S. Fryman, Esquire
Katherine A. Crawford, Esquire
Ballard Spahr Andrews & Ingersoll
1735 Market Street, 51st Floor
Philadelphia, PA 19103

FILED

MAY 16 2006

MICHAEL E. KUNZ, Clerk
By_____ Dep. Clerk

DATE:    May 11, 2006          BY:    /s/ Andrew M. Calvelli
                                      Andrew M. Calvelli

# EXHIBIT   A

permitted by law or this contract.
(D) The Contractor further agrees to insert in any subcontract or consultant agreement hereunder, provisions which shall conform substantially to the language of this clause, including this paragraph (D).

## H.10  307-19  REDACTED PROPOSALS (DECEMBER 1998)

The contractor shall provide a redacted copy of its successful technical proposal to the Contracting Officer within five (5) days after contract award. The redacted proposal shall be suitable for release by the Government under a Freedom of Information Act (FOIA) request. The redacted proposal shall be submitted in an electronic format that is readable by Microsoft Office applications.

## H.11  307-2  KEY PERSONNEL DESIGNATION (MARCH 1985)

In accordance with the contract clause entitled "Key Personnel", the following key personnel are considered to be essential to the work being performed:

JoAnn Manning
Project Director
Tel:(215) 204-3007
E-mail: jmanning@nimbus.ocis.temple.edu

Associate Director,TBA

## H.12  307-24  CONSULTANT SERVICES AND CONSENT (APRIL 1986)

The Contractor shall obtain the consent of the Contracting Officer prior to using any consultant on this contract. The Contractor shall determine whether any consultant that is used has in effect an agreement with another Federal agency for similar or like services and, if so, shall notify the Contracting Officer.  Additional instructions for the following clause: 1.  The Contractor may not submit requests for consultant approvals more  often than once a month. 2.  The Contractor must provide the information required in clause  3452.237-71 for all requests.

## H.13  307-3  DUAL COMPENSATION (MARCH 1985)

If a project staff member, subcontractor, or consultant is involved in two or more projects, at least one of which is supported by Federal funds, he/she may not be compensated for more than 100 percent of his/her time during any part of the period of dual involvement. That is, an individual is prohibited from receiving double payment for any given period of work.

## H.14  307-31  YEAR 2000 COMPLIANCE (NOVEMBER 1997)

(a) Each hardware, software, and firmware product delivered or developed under this contract must be able to accurately process date/time data (including, but not limited to, calculating, comparing, and sequencing) from, into, and between the twentieth and twenty-first centuries, and the years 1999 and 2000 and leap year calculations to the extent that other information technology, used in combination with the information technology being acquired, properly exchanges date/time data with it.  (b)  If the contract requires that specific hardware, software, and firmware products must perform as a system, then the requirements of paragraph (a) of this clause shall apply to those products as a system.  (c) With respect to Government-furnished property, the requirements of paragraph (a) of this clause shall apply only to its proper installation, unless the Contractor performs some modification or other work on the property, in which case the requirements of paragraph (a) of this clause shall extend to the modification or other work.  (d) The requirements of paragraph (a) of this clause do not apply to products specified by the Government on a "brand name and model" basis, unless the product was designed or produced by the contractor or one of its affiliates.

ED-01-CO-0007

# EXHIBIT B

/

[Code of Federal Regulations]
[Title 48, Volume 7]
[Revised as of October 1, 2001]
From the U.S. Government Printing Office via GPO Access
[CITE: 48CFR3452.243-70]

[Page 87]

TITLE 48--FEDERAL ACQUISITION REGULATIONS SYSTEM

CHAPTER 34--DEPARTMENT OF EDUCATION ACQUISITION REGULATION

PART 3452--SOLICITATION PROVISIONS AND CONTRACT CLAUSES--Table of Contents

Subpart 3452.2--Texts of Provisions and Clauses

Sec. 3452.243-70  Key personnel.

    As prescribed in 3443.106(b), insert the following clause in all
solicitations and resultant cost-reimbursement contracts:

Key Personnel (Aug 1987)

    The personnel designated as key personnel in this contract are
considered to be essential to the work being performed hereunder. Prior
to diverting any of the specified individuals to other programs, or
otherwise substituting any other personnel for specified personnel, the
contractor shall notify the contracting officer reasonably in advance
and shall submit justification (including proposed substitutions) in
sufficient detail to permit evaluation of the impact on the contract
effort. No diversion or substitution shall be made by the contractor
without the written consent of the contracting officer; provided, that
the contracting officer may ratify a diversion or substitution in
writing and that ratification shall constitute the consent of the
contracting officer required by this clause. The contract shall be
modified to reflect that addition or deletion personnel.

(End of clause)

# EXHIBIT  C



**TEMPLE UNIVERSITY**
A Commonwealth University

Office of the Provost

Conwell Hall 041-03
Philadelphia, Pennsylvania 19122
215-204-4775
Fax: 215-204-5816

August 25, 2003

Sandra Garcia
Educational Research Analyst
Institute of Education Sciences
United States Department of Education
Capitol Place
555 New Jersey Avenue, NW
Room 627H
Washington, DC 20208

VIA FAX AND USMAIL

RE:        Contract ED-01-C0-0007

Dear Ms. Garcia:

I am writing to inform you of a change in leadership for the Mid-Atlantic Regional Education Laboratory at Temple University, the Laboratory for Student Success ("LSS").

Effective immediately, Dr. C. Kent McGuire has replaced Dr. JoAnn Manning as Executive Director of LSS. Dr. McGuire is also serving as the Principal Investigator for the referenced contract. Dr. McGuire is the Dean of the College of Education at Temple University. I have attached a copy of his curriculum vita and current contact information.

Please feel free to contact me or Dr. McGuire with any questions.

Sincerely,

Ira M. Schwartz
Provost

cc:        C. Kent McGuire, Dean, College of Education
        Sue Betka, Deputy Assistant Secretary, Institute of Education Sciences

Enclosures:    Contact Information for C. Kent McGuire
        Curriculum Vita for C. Kent McGuire

TEMPLE  0614

## Contact Information

Dean C. Kent McGuire
College of Education
Ritter Hall
1301 Cecil B. Moore Avenue
Philadelphia, PA 19122-6091
Ph: (215) 204-8017, Fax: (215) 204-5622
c.kent.mcguire@temple.edu



**UNITED STATES DEPARTMENT OF EDUCATION**
*Office of the Chief Financial Officer*
*Contracts and Purchasing Operations*

October 10, 2003

Mr. Ira M. Schwartz
Provost
Temple University
Philadelphia, Pennsylvania
19122

      Re: Contract ED-01-C0-0007

Dear Dr. Schwartz:

      This letter is in response to your letter of August 25, 2003 regarding the above-referenced contract. In the letter, you informed the U.S. Department of Education ("the Department") of the departure of Dr. JoAnn Manning as the Executive Director of the Laboratory for Student Success ("LSS"). Your letter stated that Temple University ("Temple or "the University") replaced Dr. Manning with Dr. C. Kent McGuire, the current Dean of the College of Education at Temple University. You added that Dr. McGuire would also serve as the Principal Investigator for the contract.

      Under the contract between the University and the Department, we believe that Temple's termination of Dr. Manning as Executive Director and subsequent replacement by Dr. McGuire as outlined in your letter is premature. The contract provides that the University must notify the Department *reasonably in advance* of any substitution of "key personnel," and the Department's *contracting officer must approve, in writing*, the substitution of Dr. McGuire before he can assume the responsibilities of Executive Director. (emphasis added).

      Specifically, the contract between the Department and Temple University contains a key personnel clause. See Special Contract Requirements, Section H. 11. The contract lists Dr. Manning (as well as the Associate Director) as "Key Personnel." The regulation implementing this provision states:

The personnel designated as key personnel in this contract are considered to be essential to the
      work being performed hereunder. Prior to ...substituting any other personnel for specified
      personnel, the contractor shall notify the contracting officer *reasonably in advance and
      shall submit justification (including proposed substitutions) in sufficient detail to permit
      evaluation of the impact on the contract effort.* No diversion or substitution shall be made
      by the contractor without the written consent of the contracting officer... (emphasis added)

48 CFR 3452.247-70.

**TEMPLE 0621**

Page 2 -- Letter to Mr. Ira Schwartz

The Department considers and will treat the August 25, 2003 letter as notification of the proposed change to key personnel under the contract. The Department is concerned, however, about Dr. McGuire's ability to serve as the Executive Director for this contract while carrying out his responsibilities as the Dean of the College of Education. In a memorandum dated October 6, 2003, Dr. McGuire wrote the Department and attached a revised organizational chart. In the memo, he wrote, "I am serving as director in this interim period. Day-to-day operations are the joint responsibility of John Kovach and Marilyn Murphy."

In the Department's Request for Proposal (RFP) for this contract, the document stated that "key staff must commit at least 50 percent of their time to this contract." See Section L, Task 6 (Proposed Staffing and Qualifications). While the Department does not have any concerns about Dr. McGuire's academic qualifications to serve as Executive Director, we are concerned about his ability to devote the required amount of time to the LSS, about whether Dr. McGuire will be serving permanently as Executive Director, and whether the apparent uncertainty over the management of the LSS will impact Temple's performance under the current contract. In short, we ask that the University clarify its plans regarding the management of the LSS.

In particular, we would like to know whether Dr. McGuire plans to serve permanently as Executive Director. If not, we would like to know what the University's plans are for filling the position of Executive Director. In sum, we would like Temple to provide the Department with an assurance that Dr. McGuire -- or another individual who is appointed permanently as Executive Director of the LSS -- will be spend at least 50% of his or her time overseeing the LSS contract as envisioned by the RFP. If the University cannot make such an assurance regarding Dr. McGuire or another individual to be named, the Department would like to be notified immediately.

Finally, we note that we recently saw an advertisement that the University placed in the September 3rd edition of *Education Week*; it sought a Deputy Director to "direct and oversee all LSS day-to-day operations." Is the University still seeking to fill this position, and if so, will this person replace the current Deputy Directors who have current day-to-day oversight of the LSS?

Thank you for your prompt response to this letter. Please feel free to contact me at (202)-708-9740 if you have any questions or would like to discuss this further.

Sincerely,

Helen M. Chang
Contracting Officer

TEMPLE 0622

Page 3 – Letter to Mr. Ira Schwartz

Cc: Sandra Garcia
Program Officer

Susan Smith
Associate University Counsel
Temple University

Dr. C. Kent McGuire
Dean, College of Education

TEMPLE  0623

# EXHIBIT   D

## LABORATORY FOR STUDENT SUCCESS
## REVIEW OF ADMINISTRATIVE DOCUMENTATION

A preliminary review of documentation establishing the Laboratory for Student Success (LLS) at Temple University reveals the following about the Lab's organization, governance and administration, as well as who is contractually accountable for it's performance and prudent operation:

- Once established, the LSS is overseen by a "Regional Governing Board" that, among other things has *"sole responsibility* (my emphasis) for appointing the Executive Director for the Laboratory", "evaluating the performance of the LSS Executive Director, Executive Directorate, and key staff on an annual basis" and approving new Board members as vacancies arise through resignations or mandated term expirations (Board By-Laws).

  It would seem from this, that under current Board By-Laws Temple is not in a position to directly influence either the composition of the Board, or the appointment/continued employment of the LSS Executive Director. Potential influence on the Governing Board is further limited by the rule barring "any staff of the sponsoring institution" (In this case Temple) from serving as a voting member of the Board (Statement of Work, Subtask 5.1b Governance).

- The LSS Executive Director has "overall administrative and substantive responsibility for the work of the Laboratory including the power to hire staff and make financial decisions pertaining to the Lab", and reports to the Governing Board (Board By-Laws).

  A narrow interpretation of this statement would suggest that Temple may not have the authority under Board By-Laws to unilaterally determine an alternative "reporting relationship" for the Lab or its Executive Director. Also, since JoAnne Manning is designated as a "Key Personnel" in the Award Contract (Section H11 307-2), it is likely that any change in her status would have to be cleared with the appropriate DOE Contract Officer (See Contract Clause I.16 3452.243-70 Key Personnel).

- The Governing Board has the authority to "Establish appropriate by-laws and procedures, including *committee structures* (my emphasis), to carry out its designated responsibilities", and to "Establish *standards* (my emphasis) for the Laboratory's effective governance and administration, including staff selection." (Statement of Work, Subtask 5.1a, Establish and Convene a Regional Governing Board). The Board also has the power to amend its by-laws through "an affirmative vote of two-thirds of the Directors in office." (Board By-Laws)

  Through the mechanism of a by-law revision, Temple University could be designated (with Board oversight) to exercise day-to-day administrative control

TEMPLE  0001

over organizational, financial and human resource issues in the Lab, including selection and review of the Executive Director. Temple personnel policies could also be accepted as standards applicable for management of all Laboratory staff. Under this scenario, the Board would retain general control of the LSS, determining "the mission of the Laboratory", "establishing short and long term goals" necessary to satisfy the "terms and conditions of the award", and ensuring "that the Laboratory responds to the educational needs of high priority to its region." (Board By-Laws; Statement of Work, Subtask 5.1 Governance).

There is some logic to such a division of labor on practical and financial, as well as legal/contractual grounds. Practical matters include:

- The Board has neither the time nor the infrastructure to monitor and exercise direct control over daily LSS operations.

- The LSS is located physically on the Temple campus in facilities provided by the University.

- The LSS makes use of Temple financial and information systems to support administrative functions in the Lab.

Temple administration is therefore the only entity in a position to provide regular proactive oversight for LSS operations.

Temple's actual/potential financial liabilities as the sponsoring institution and "contractor of record" include:

- Responsibility for any expenses incurred in pursuit of the Lab's mission in excess of amounts specified in the contract (Sec. H.6 306-19 Overhead Ceiling Rates; Clause I.34 52.216-7 Allowable Cost and Payment)

- The potential for losses from penalties, withheld payments, or contract cancellation due to malfeasance or non-performance (Award Contract Clauses I.14 3452.242-72 Withholding of Contract Payments; I.22 52.203-8 Cancellation, Rescission, and Recovery of Funds for Illegal or Improper Activity; I.23 52.203-10 Price or Fee Adjustment for Illegal or Improper Activity)

- Provision of "in-kind" contributions including use of facilities and reduced overhead rates, as well as "salaries for JoAnne Manning, Director/ Co-Principal Investigator, and Dr. Trevor Sewell, Co-Principal Investigator (Award Contract, B.3 Cost Sharing)

Without the ability to intervene directly in LSS administrative decision making and cost management to prevent any illegal, improper, or financially questionable

TEMPLE 0002

actions, Temple would be exposed without recourse to substantial and unacceptable financial risk. Further, as Ms. Manning and Dr. Sewell are Temple employees under the provisions of the DOE contract, the University could also be held financially liable for actions of both these individuals above and beyond any penalties or payment limitations that might be imposed by DOE for LSS contract violations.

Legal and contractual considerations include,

- Temple University's signed agreement to abide by all applicable anti-discrimination laws and other regulations covering employment by US government contractors.

- All full-time employees of the LSS are regular employees of Temple University, with all rights and protections afforded by Temple personnel policies, as well as applicable labor laws (e.g. eligibility for unemployment compensation). Those LSS employees in various union bargaining units would have recourse in the event of layoff, termination, or pending disciplinary action to protections and due process procedures afforded under the applicable union agreements. If a decision was made to move the LSS "off-campus", full-time employees would have the option of seeking continuing employment with Temple under the procedures set up in Temple's personnel policies, accepting an appropriate severance package, or continuing employment with the LSS.

The above points amply demonstrate Temple's stake in the employment practices and decisions of the LSS and its director, even if current Governing Board by-laws make no mention of, or provision for, Temple's contractual obligations. A standard of reasonable balance between authority and responsibility/accountability would suggest that Temple needs additional empowerment in matters of Laboratory administration to adequately protect its interests and justify its continuing support of the LSS

TEMPLE   0003

# EXHIBIT   E

**Chang, Helen**

From:            Bell, Kenneth
Sent:            Friday, November 21, 2003 2:00 PM
To:             Chang, Helen
Subject:      RE: Temple

Helen

I just spoke with Ira Schwartz, the Provost at Temple about the Project Director situation. What I tried to explain to him was that when a change in key personnel is desired, that they need to request the change and have it approved by the Dept. of Education and can not just inform us of the change. He seem to take it as though we ( the Dept) wanted JoAnn Manning as the Project Director. I explained that this is not the case, but we do need to approve the person who will be taking her place. He said that he would send a letter requesting Kent McGuire as the new project director. Also, if I remember correctly, I believe the main concern of yours was if Kent had the time to dedicate to the Lab. I did not discuss this with Ira Schwartz.

I also tired to call Kent McGuire, but he is out of town until Tuesday of next week.

     -----Original Message-----
From:       Chang, Helen
Sent:       Friday, November 21, 2003 9:07 AM
To:        Bell, Kenneth
Subject:   Temple

While I am thinking about Labs, sometime soon will you call Temple and tell them we have not had a resolution on their new Project Director. Helen

1

**TEMPLE 0633**

| | |
|---|---|
| From: | Chang, Helen |
| Sent: | Wednesday, November 12, 2003 6:10 PM |
| To: | Garcia, Sandra |
| Cc: | Bell, Kenneth; Wright, Zilphia; Xavier, Moira |
| Subject: | RE: Couple of Questions |

Sandra,

Second question first, in less Ken tells you otherwise, we have not received a response to our letter about the Project Director. As it was sent to the Provost at Temple, I don't know if it got to Kent.

The Quasp -
We (Moira, Zilphia, Ken and myself) had two main concerns. One was the panel, and your revision addressed the fact that we could form the products panel in several ways. Our other concern was 3.5 as the standard for payment. We would rather it be 4 but the practical side is that we also need the to be agreed to. Could I ask you to call and talk to Ken about the math.

Thanks, Helen

(Team I will send you what Sandra is talking about in a minute)

-----Original Message-----
From: Garcia, Sandra
Sent: Wednesday, November 12, 2003 4:20 PM
To: Chang, Helen
Subject: Couple of Questions

Hi Helen-

Any comments on the draft QASP changes?

Did you ever get anything from Temple on Kent? I'm going to see him tomorrow afternoon and wanted to know where we stand on this.

Thanks. Sandra

1

**TEMPLE 0634**

Ken,

Thanks. You get it right. My/our concern is that Kent has a job as Dean of the College of Education. We need Temple to tell us how Kent can give the contract 50% of his time to run the lab. If you can't get back to Ira on Monday before they send the letter, we can put it into questions on the Annual Plan. I will, or you can, look in Isadora's cubical to see if the plan might be there.

Helen

> ----Original Message----
> **From:** Bell, Kenneth
> **Sent:** Friday, November 21, 2003 2:00 PM
> **To:** Chang, Helen
> **Subject:** RE: Temple
>
> Helen
>
> I just spoke with Ira Schwartz, the Provost at Temple about the Project Director situation. What I tried to explain to him was that when a change in key personnel is desired, that they need to request the change and have it approved by the Dept. of Education and can not just inform us of the change. He seem to take it as though we ( the Dept) wanted JoAnn Manning as the Project Director. I explained that this is not the case, but we do need to approve the person who will be taking her place. He said that he would send a letter requesting Kent McGuire as the new project director. Also, if I remember correctly, I believe the main concern of yours was if Kent had the time to dedicate to the Lab. I did not discuss this with Ira Schwartz.
>
> I also tired to call Kent McGuire, but he is out of town until Tuesday of next week.
>
> > ----Original Message----
> > **From:** Chang, Helen
> > **Sent:** Friday, November 21, 2003 9:07 AM
> > **To:** Bell, Kenneth
> > **Subject:** Temple
> >
> > While I am thinking about Labs, sometime soon will you call Temple and tell them we have not had a resolution on their new Project Director. Helen

**TEMPLE 0635**

1

| | |
|---|---|
| **From:** | Garcia, Sandra |
| **Sent:** | Monday, December 15, 2003 6:11 PM |
| **To:** | Bell, Kenneth; Chang, Helen |
| **Subject:** | FW: Kovach and Murphy bios and resumes |


vita & bio


MM Short
Biography.doc


Murphy resume
rev.doc


Card for Marilyn
Murphy

Because the Temple letter was not clear I made the assumption that Temple wants to use John Kovach and Marilyn Murphy as co-Deputy Directors until they hire a new full time executive director. I asked John (who asked Marilyn) to send me their bios. See attached.

I recommend approval. Not sure how to proceed so will wait to hear back from you.

Sandra Garcia
202-219-1597

-----Original Message-----
From: Marilyn Murphy [mailto:murphyma@astro.temple.edu]
Sent: Thursday, December 11, 2003 10:14 AM
To: Sandra Garcia
Subject: Kovach and Murphy bios and resumes

Hi Sandra: Per your request to John.

1

TEMPLE 0652

**From:** Garcia, Sandra
**Sent:** Wednesday, December 17, 2003 12:54 PM
**To:** Bell, Kenneth; Chang, Helen
**Subject:** LSS

I just got the original letter from LSS on the Executive Director issue. The letter was confusing and I assumed he was saying that John and Marilyn would serve as co-managing directors in place of one executive director. But in rereading his cover note he said "I will direct the lab until such time as our search is successfully completed."

I do not think that will work out. We can't tell them whom to assign but it looks like John and Marilyn can handle the jobs until an executive director is hired. Where do we go from here?

Sandra Garcia
909-819-1597

TEMPLE 0661

# EXHIBIT   F

| | |
|---|---|
| **From:** | Vicki McGarvey |
| **To:** | Schwartz, Ira |
| **Date:** | 10/30/2002 11:33PM |
| **Subject:** | LSS Conference Call |

Ira -

I am attaching a document prepared by Jim Portwood after we spent a day combing through contracts, regulations, etc. It is a rough draft of the "talking points" that we would prepare should Joe Dominic agree to have the Board meet to consider changing the bylaws. If he does agree, I expand on this by obtaining the bylaws from the labs at Brown and UNC to help in making this case to them.

As Dick described in his email, this is a chicken and egg problem. The original plan for the study panel was to address the governance structures as well as the administrative ones. However, after reading the regulations and the Board bylaws it is emphatically and unambiguously clear that the Board holds all the authority and Temple has all the responsibility and liability. The key information synthesized from the Board bylaws is:

Once established, the LSS is overseen by a "Regional Governing Board" that, among other things has "sole responsibility for appointing the Executive Director for the Laboratory", "evaluating the performance of the LSS Executive Director, Executive Directorate, and key staff on an annual basis" and approving new Board members as vacancies arise through resignations or mandated term expirations (Board By-Laws).

Jim's basic point is that no recommendation made by the study panel would be valid without the changes to the bylaws. So, why waste everyone's time before establishing a change to the bylaws?

Of course, as Dick suggests, a change to the bylaws could be one of the study panel's recommendations. But all other work done by the study panel would have to be based on the assumption that the bylaws would be amended.

I hope this is helpful.
VLM


**CC:**         Englert, Richard


TEMPLE   0004

# EXHIBIT   G

**TEMPLE UNIVERSITY**
A Commonwealth University

Office of the Provost

Conwell Hall 041 (41)
Philadelphia, Pennsylvania
215-204-4775
Fax: 215-204-5816

January 24, 2003

Joseph Dominic
Chair, LSS Governing Board of Directors
The Heinz Endowments
30 CNG Tower
625 Liberty Avenue
Pittsburgh, PA 15222

Dear Joe,

As you know, we are in the midst of recruiting a new Dean of the College of Education. This new Dean will have considerable support and resources at his or her disposal in addressing the needs of the College. One of the first orders of business for that new Dean will be the recruitment of a Director for CRHDE. It has been my expectation that the relationship between the CRHDE and the LSS would be strengthened as would the relationships between these entities and the College. For that reason, I was willing to join with you and the LSS Board to commission a study panel to explore how the LSS, CRHDE, and the University could work together more effectively in the future.

Since I became Provost, you and I have discussed a number of incidents which have raised questions about whether the relationship between the CRHDE and the LSS can be improved and strengthened. Now, a new issue has arisen. There was a serious violation of University policy when the Executive Director of the LSS submitted a grant proposal to the New Jersey Department of Education without seeking approval from the Dean of the College of Education or other university authorities. I would not permit other senior administrators to make unauthorized commitments on behalf of Temple University and I cannot allow the Executive Director of the LSS to do so either. This creates an awkward situation since Temple University bears all financial liability and legal responsibility for the actions of the LSS's Executive Director and its staff. However, the LSS Board retains the ability to appoint and evaluate the Executive Director.

The actions taken by the Executive Director have placed me and the University in an unacceptable position. Frankly, these actions cause me to have grave doubts about the possibilities for the partnership we both envision. It is troubling that these incidents continue to occur, particularly just as the study panel begins its work and before they have issued their findings. Our General Counsel's Office is currently reviewing the feasibility of the study panel's first recommendation.

TEMPLE  0736

While I believe a stronger and more effective partnership between all parties is both desirable and possible, I cannot envision this being accomplished given the current leadership in the LSS. I also do not think it is appropriate to prolong the situation any longer and to burden a new Dean with this escalating and seemingly unending problem. Therefore, unless the LSS Board immediately changes the leadership of the LSS, the only reasonable course of action is for Temple University to pursue terminating its relationship with the LSS. I am sorry that this has not worked out as we had hoped.

Sincerely,

Ira M. Schwartz
Provost

Cc:    Dr. Joe Ducette, Acting Dean, College of Education
Dr. Richard Englert, Vice President of Administration
Dr. Trevor Sewell, Acting Director, CRHDE
Dr. Ken Soprano, Vice President for Research and Graduate Studies

TEMPLE 0737

# EXHIBIT   H

**TEMPLE UNIVERSITY**
A Commonwealth University

Office of the Provost

Conwell Hall 041-03
Philadelphia, Pennsylvania 19
215-204-4775
Fax: 215-204-5816

August 14, 2003

BY FACSIMILE AND
FIRST CLASS MAIL

Joseph Dominic
Chair, LSS Governing Board of Directors
The Heinz Endowments
30 CNG Tower
625 Liberty Avenue
Pittsburgh, PA 15222

Re: Laboratory for Student Success at Temple University

Dear Joe,

As we discussed earlier today, Temple University has become increasingly disillusioned with the work of the Laboratory for Student Success (LSS) and its Executive Director, Dr. Jo Ann Manning. We find ourselves at the end of our rope with regard to Dr. Manning's performance as a Temple employee.

Several times in the past, we have discussed Dr. Manning's record of serious performance problems as well as the poor performance of the Laboratory for Student Success. With serious concerns for the well-being of the LSS, on January 24, 2003, I asked you to replace Dr. Manning. You responded on February 21 that you wanted to renegotiate our governance relationship.

Following that exchange, we met with Dr. Manning on March 21 to confirm what we thought was a mutual understanding of our expectations of her as a Temple employee, including the limits of her authority. We memorialized the substance of the meeting on April 2 in a letter on which you were copied. In that letter, we specifically discussed the limits on Dr. Manning's authority to bind the University. Nonetheless, we recently discovered – totally by accident – that she had filed papers with the Department of State to incorporate the LSS as an entity

**TEMPLE  0682**

independent from Temple. Dr. Manning listed herself as the LSS' office provider and used a Temple address for the corporation. This is a major breach of the terms our April letter and far exceeds the authority of any Temple employee.

While assessing the implications of this act and how to respond as Dr. Manning's employer, other matters surfaced. Most recently, the Bridgeville Community Action Agency wrote to the University President alleging, effectively, that Dr. Manning fired a Temple employee for suggesting to Dr. Manning that she formally apologize to participants in a leadership conference held at Temple this summer for the apparently poor conditions of the accommodations. We are looking into this allegation as well. A copy of the letter is attached.

In addition, we recently have learned from the U.S. Department of Education that they have serious concerns about the performance of the LSS. It is questionable whether the LSS is even a candidate for contract renewal due to the Department of Education's poor estimation of its performance.

As a result of the foregoing, Temple has suspended Dr. Manning from her employment with Temple with pay pending further consideration of the present issues and the outcome of the Board's determination of how it will proceed. **Temple will make a final decision on whether it will discharge Dr. Manning as a Temple employee no later than September 5.** In the event that the Governing Board opts to retain Dr. Manning as the LSS' Executive Director, then the Board will need to address with Temple a transition plan for the approximately 65 employees who work in the LSS. It is essential, in our view, that the LSS Governing Board treat these employees fairly.

Temple requests, however, that the Board immediately discharge Dr. Manning from her duties as Executive Director of the LSS and consult with the University about a suitable replacement. In the interim, Temple proposes that the Board appoint the new Dean of the College of Education, Dr. Kent McGuire, as Interim Director of the LSS. For your information, Dr. McGuire has replaced the former Dean, Dr. Trevor Sewell, as Interim Director of the Center for Research in Human Development in Education.

Given Dr. McGuire's vision for the College and our dedication and commitment to the LSS thus far, we would very much like to see our relationship continue and the LSS prosper. To that end, if the Governing Board removes Dr. Manning as Executive Director of the LSS, we would like to renegotiate our contractual relationship with the LSS' Governing Board, as you proposed in your February letter, to create an authentic partnership role for the University.

**TEMPLE 0683**

Please notify me at your earliest convenience how the Governing Board intends to proceed.

Sincerely,

Ira M. Schwartz
Provost

cc:    Joann Manning, Executive Director, LSS
       Kent McGuire, Dean, College of Education
       Susan B. Smith, Esq.

TEMPLE 0684

# EXHIBIT  I